IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL B. RUSSO, M.D.,           )     CIVIL NO. 10-00125 LEK
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
STEPHEN B. JONES, in his          )
capacity of the Commander of      )
Tripler Army Medical Center;      )
JOHN OR JANE DOES 1-25; and       )
DOE ENTITIES 1-25,                )
                                  )
          Defendant.              )
_____   )

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER IN PART AND PERMITTING FURTHER BRIEFING

Before the Court are Plaintiff Michael B. Russo, M.D.'s ("Plaintiff") Motion for Preliminary Injunction ("Injunction Motion"), filed on March 8, 2010, and Renewed Motion for Temporary Restraining Order ("Renewed TRO Motion"), filed on May 21, 2010. Defendant Stephen L. Jones, in his official capacity as Commander of Tripler Army Medical Center ("Defendant") filed his memorandum in opposition to the Injunction Motion on April 26, 2010, and Plaintiff filed his reply on May 3, 2010. Defendant filed a supplemental memorandum in opposition to both motions on June 7, 2010. These matters came on for hearing on June 9 and June 17, 2010. Appearing on behalf of Plaintiff, who was present on June 9, 2010, were

Eric Seitz, Esq., and Ronald Kim, Esq.  Appearing on behalf of
Defendant were Major Jennifer Bottoms and Assistant United States
Attorney Thomas Helper.  After careful consideration of the
motions, supporting and opposing memoranda, and the arguments of
counsel, this Court HEREBY DENIES IN PART Plaintiff's Injunction
Motion and Plaintiff's Renewed TRO Motion for the reasons set
forth below and ORDERS the parties to submit further briefing on
the issue of Plaintiff's right to the representation of counsel
before the hearings board.

<u>**BACKGROUND**</u>

The factual and procedural background of this case is
set forth in this Court's April 20, 2010 Order Denying
Plaintiff's Motion for Temporary Restraining Order ("April 20,
2010 Order").  This Court will only discuss the relevant events
that have occurred since that time.  Plaintiff has requested a
hearing in response to the Notice of Proposed Adverse Clinical
Privileging Action by the Commander dated March 22, 2010.
Plaintiff received a Provider Notification of Credentials
Committee Hearing dated May 17, 2010 ("May 17, 2010 Notice").  It
included a list of the allegations that the credentials committee
will review at the hearing and a list of the witnesses that the
hearing board will call.  The May 17, 2010 Notice also states:

> The committee will hold the hearing at 0800 hours
> on 25-26 May 2010 . . . .  You have the right to
> be present, to present evidence and call witnesses
> in your behalf, to cross-examine witnesses called

2

> by the committee, to consult legal counsel, and to
> be advised by legal counsel at the hearing.  It is
> your responsibility to arrange for the presence of
> any witnesses you desire . . . .  You may contract
> the Office of the Staff Judge Advocate for legal
> advice.  Legal representation in this matter is
> not an entitlement, but may be provided subject to
> resource limitations as determined by the
> appropriate supervisory Judge Advocate.  You may
> retain a civilian attorney at your own expense.
> You will be provided a copy of all information
> that will be considered at the hearing.

[Renewed TRO Motion, Decl. of Michael B. Russo, M.D. ("Russo Decl."), Exh. R at ¶ 3.]  Defendant provided Plaintiff with over 1,000 pages of documents, and initially informed him that he could not disclose the documents to his attorney.  Defendant, however, later allowed Plaintiff's counsel to review the documents.  [Russo Decl. at ¶¶ 7-8.]

The May 17, 2010 Notice stated that the chairperson of the hearing board may extend the date of the hearing for good cause, upon Plaintiff's written request.  Plaintiff sought an extension, arguing, *inter alia*, that Defendant did not provide him sufficient time to prepare for the hearing.  [Exh. S to Russo. Decl.]  Defendant denied Plaintiff's counsel's request for an extension, [Exh. U to Russo Decl.,] and initially denied a request from Plaintiff himself.  [Exh. W to Russo Decl.]  Defendant later agreed to extend the date of the hearing.  As of the hearing on the instant Motions, however, the hearings board had not set a date for Plaintiff's hearing.  Plaintiff's counsel stated that he believes that, absent an order from this Court,

3

the hearings board will set the hearing on a date that it knows
he will not be available due to his trial schedule.

Plaintiff filed the Renewed TRO Motion seeking an order
restraining Defendant from proceeding with the hearing on May 25–
26, 2010 and from making any adverse reports about Plaintiff to
the National Practitioners Data Bank ("NPDB").  The Injunction
Motion seeks "a preliminary injunction enjoining and restraining
the Defendants, their agents, employees, and successors in
interest from a) continuing to suspend or otherwise restrict
Plaintiff's hospital privileges at [Tripler Army Medical Center
("TAMC")] and b) making any reports about or pertaining to
Plaintiff to the [NPDB]."  [Injunction Motion at 2.]  During the
June 17, 2010 portion of hearing on the motions, however,
Plaintiff's counsel acknowledged that there is no imminent threat
of an adverse report to the NPDB at this time.  Plaintiff now
bases the Renewed TRO Motion and the Injunction Motion on the
imminent threat of irreparable harm connected to his impending
retirement from the United States Army ("Army") and his intended
employment in the private sector.

Plaintiff states that he is scheduled to retire from
the Army on October 1, 2010, and that this date was set when he
began work at TAMC in September 2007.  [Russo Decl. at ¶ 2.]
Plaintiff, however, has accumulated sufficient paid leave so that
he is "scheduled to transition to civilian employment on or about

July 8, 2010[.]" [Id. at ¶ 3.]  He anticipates starting work in the private sector on or about July 12, 2010, but he argues that he will not be able to do so if the proceedings regarding his TAMC clinical privileges are still pending.  [Id. at ¶ 4.]  He contends that the adverse privileging proceedings "prevent [him] from filing necessary paperwork to obtain medical malpractice insurance, civilian hospital privileges, and authorization to bill for various insurers, all of which [he] must obtain prior to beginning any civilian employment."  [Id. at ¶ 5.]

At the hearing on the motions, Plaintiff submitted a declaration by Gabriele Barthlen, M.D., the Medical Director, President and chief executive officer of Sleep Center Hawaii, LLC, which was marked as Plaintiff's Exhibit 2 ("Barthlen Declaration").  She states that she is hiring Plaintiff to open the Neurological Services Division of Sleep Center Hawaii, but that she cannot officially do so until TAMC restores his credentials.  [Barthlen Decl. at ¶¶ 8, 10.]  According to Dr. Barthlen, before Plaintiff "can provide services for Sleep Center Hawaii he needs to obtain malpractice insurance, register with HMSA, HMAA, UHA (among other insurance carriers), register with Medicare, with Medicaid, and obtain practice privileges at several hospitals."  [Id. at ¶ 11.]  Dr. Barthlen opines that Plaintiff "will be greatly hindered to obtain these civilian practice pre-requisites with his current clinically restricted

status." [Id. at ¶ 12.]

At the hearing on the motions, Plaintiff's counsel argued that the Court should issue an order: 1) fully restoring Plaintiff's privileges; 2) directing TAMC to conduct the board hearing at a time that is mutually convenient to Plaintiff and his counsel sometime within the next two to three weeks; 3) ordering TAMC to allow Plaintiff's counsel to represent him at the hearing, as opposed to merely being present and advising Plaintiff; and 4) requiring Defendant to provide ten days prior notice before implementing any additional adverse actions. Defense counsel argued that the Court should deny the Injunction Motion and the Renewed TRO Motion and make the following findings: 1) there is no threat of irreparable harm to Plaintiff; 2) there is no evidence of discriminatory intent in the privileging process; and 3) Plaintiff has received all of the process that he is entitled to.

<strong><u>DISCUSSION</u></strong>

**I.    <u>Jurisdiction</u>**

The Court notes that Defendant argues the district court does not have jurisdiction over this case and therefore cannot issue any form of relief.  Defendant filed a motion to dismiss on May 20, 2010, and it is set for hearing on July 12, 2010.  This Court will not reach the issues raised in the motion to dismiss in connection with the instant motions unless they are

necessary to the disposition of the instant motions.  Plaintiff

seeks four forms of relief in the instant motions: 1) restraining

or enjoining any potential adverse report to the NPDB;[1] 2)

requiring Defendant to restore his fully clinical privileges; 3)

requiring Defendant to allow him to be represented by counsel,

and not merely advised by counsel, before the hearings board; and

4) requiring Defendant to give him ten days prior notice before

implementing any future adverse employment actions.  These

requests fall into two categories: relief relating to the merits

of the adverse privileging proceeding against Plaintiff; and

relief relating to the process that he is entitled to in the

proceeding.  Each form of relief raises different jurisdictional

questions.

  Plaintiff's request for an order preventing any adverse

report to the NPDB and requiring Defendant to restore Plaintiff's

clinical privileges go to the merits of the adverse privileging

proceeding.  Insofar as this Court rules that Plaintiff is not

entitled to a preliminary injunction or a restraining order

preventing any adverse report to the NPDB and/or requiring

Defendant to restore Plaintiff's clinical privileges, the Court

declines to address the jurisdictional issue at this time.  This

Court expresses no opinion as to the merits of the parties'

---

[1] Plaintiff's counsel has conceded that there is no imminent threat of an adverse report to the NPDB, but this Court will nevertheless address this argument for the sake of completeness.

respective positions as to whether there is jurisdiction over
claims which address the merits of the adverse privileging
process.

Plaintiff's request regarding his right to
representation of counsel before the hearings board and his
entitlement to prior notice before the imposition of any further
adverse employment action go the process that he is entitled to
during the adverse privileging proceedings.  Even if, as
Defendant argues, the Court lacks jurisdiction to review the
merits of the adverse privileging process, the Court is inclined
to find that it has jurisdiction to issue equitable relief to
ensure that Defendant does not violate Plaintiff's constitutional
rights while conducting the adverse privileging process.  "It is
well established that federal courts have jurisdiction to provide
equitable relief to protect rights safeguarded by the
Constitution." Clinton v. Babbitt, 180 F.3d 1081, 1087 (9th Cir.
1999) (citing Bell v. Hood, 327 U.S. 678, 684 (1946)).  Further,
"[i]n 5 U.S.C. § 702, the United States expressly waived
sovereign immunity in non-statutory review actions for
nonmonetary relief brought under 28 U.S.C. § 1331." Id.
(citations and quotation marks omitted).

## II. **Motions**

"The standard for issuing a temporary restraining order
is identical to the standard for issuing a preliminary

8

injunction." <u>Moore v. Nat'l City Mortgage Co.</u>, Civil No.
09-00461 SOM-KSC, 2010 WL 234866, at *1 (D. Hawai`i Jan. 21,
2010) (citations omitted).  The Court set forth this standard in
detail in the April 20, 2010 Order.  The Court, however,
emphasizes that a "preliminary injunction is an extraordinary and
drastic remedy never awarded as of right." <u>Winter v. Natural
Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 376 (2008) (citation
omitted).

As to Plaintiff's request regarding any potential
report to the NPDB and the restoration of his privileges, the
critical issue is whether Plaintiff faces an actual and imminent
threat of irreparable harm.  [April 20, 2010 Order at 18 (citing
cases.]

**A.    Report to NPDB**

Plaintiff initially argued that, if he retired from the
Army while the adverse privileging process was pending, he could
be immediately reported to the NPDB.  This Court has already
found that an adverse privileging report to the NPDB would cause
irreparable harm to Plaintiff.  [<u>Id.</u> at 21.]  The Court, however,
FINDS that Plaintiff does not face an imminent threat of an
adverse report to the NPDB.

Army Regulation 40-68,[2] ¶ 14-3b. provides, in pertinent

---

[2] The pertinent portions of Army Regulation 40-68 are
attached to the Injunction Motion as Exhibit A to the Declaration
(continued...)

part:

> > (1) Privileged providers/professionals will
> > be reported to the NPDB or to a State regulatory
> > agency within 30 calendar days of approval when
> > any of the following occur-
> > . . . .
> > (c) The provider/professional with an adverse
> > privileging action in effect or limited scope of
> > practice elects to separate from military service,
> > retire, or terminate his/her employment . . .
> > **rather than to contest the adverse
> > privileging/practice action**.

(Emphasis added.)  Plaintiff is contesting his adverse

privileging action.  Although he intends to retire, his

retirement is not in lieu of a challenge to the adverse

privileging action.  Plaintiff's retirement therefore will not

trigger a report to the NPDB.

Plaintiff has not established that he faces an imminent

threat of being reported to the NPDB.  Insofar as an actual and

imminent threat of irreparable harm is a required element to

obtain a temporary restraining order or a preliminary injunction,

this Court need not address Plaintiff's likelihood of success on

the merits, the balance of the equities, or the public interest.

See G. v. Hawaii, Dep't of Human Servs., Civ. Nos. 08-00551

ACK-BMK, 09-00044 ACK-BMK, 2009 WL 2877597, at *5 (D. Hawai`i

Sept. 4, 2009) ("Because Plaintiffs have failed to establish a

likelihood of irreparable harm, which is an essential element for

---

[2](...continued)
of Eric A. Seitz.

preliminary injunctive relief, the Court need not consider their likelihood of success on the merits, the balance of equities, or the public interest." (citing Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); Germon v. Times Mirror Co., 520 F.2d 786, 788 (9th Cir. 1975))).

Plaintiff's Injunction Motion and Renewed TRO Motion are DENIED to the extent that they seek an order prohibiting an adverse report to the NPDB.

B.   **Restoration of Privileges**

Plaintiff anticipates beginning his employment with Sleep Center Hawaii on or about July 12, 2010.  He argues that he will not be able to do so if the adverse privileging process is still pending.  Dr. Barthlen asserts that she cannot officially hire Plaintiff until TAMC restores his privileges, and she claims that the proceedings are preventing Plaintiff from working for Sleep Center Hawaii.[3]  [Barthlen Decl. at ¶¶ 10, 13.] Dr. Barthlen, however, merely states that Plaintiff will be

---

[3] The Court is unclear what Plaintiff's status with Sleep Center Hawaii will be if TAMC does not restore his privileges before his retirement.  Dr. Barthlen states "I am hiring" Plaintiff, but she also states that she "cannot officially hire" him until TAMC restores his privileges and that TAMC "is preventing [Plaintiff] from working for Sleep Center Hawaii[.]" [Barthlen Decl. at ¶¶ 8, 10, 13.]  Her statements seem to suggest that Sleep Center will hold the position for Plaintiff, but that he cannot begin work until the adverse privileging process is resolved.  The Court, however, notes that its analysis of the irreparable harm issue would not change even if Sleep Center Hawaii will hire someone else if Plaintiff is unable to begin work in July 2010.

"greatly hindered" in obtaining the pre-requisites of private practice.  [Id. at ¶ 12.]  She does not claim that it will be impossible for Plaintiff to obtain malpractice insurance, register with various health insurance carriers, or obtain hospital privileges.  If it is possible for Plaintiff to do so, although significantly more difficult and more expensive, he should be able to begin work for Sleep Center Hawaii.  If it is not possible for Plaintiff to obtain hospital privileges because of the pending adverse privileging proceedings, Plaintiff could engage in private practice.  Even without malpractice insurance, health insurance registration, or hospital privileges, Plaintiff could return to the academic field, an area in which he had extensive experience prior to working for TAMC.

This Court must also consider the status of Plaintiff's employment with the Army.  First, although Plaintiff's anticipated last work day with the Army is July 8, 2010, he will have paid leave status until October 1, 2010.  [Russo Decl. at ¶ 3.]  Thus, even if he is temporarily unable to secure private sector employment immediately after his retirement, he will effectively receive his military pay for several months after he stops work.  Further, TAMC has not terminated Plaintiff's employment, and the Army is not forcing him to retire.  Nor does Plaintiff allege that he is retiring because of the alleged animosity he has faced at TAMC as a result of the changes he has

suggested for the neurology clinic.  [Id. at ¶ 2 (stating that
his retirement date was set when he arrived at TAMC in September
2007).]  There is no indication that Plaintiff could not continue
to work at TAMC.

Moreover, even assuming that Plaintiff stops work with
the Army in July 2010 and is unable to immediately obtain private
sector employment, all indications are that his unemployed status
will be temporary.  Dr. Barthlen states that Plaintiff is only
one of two Board Certified neurologists in the state of Hawai`i
who specializes in sleep disorders.  [Barthlen Decl. at ¶ 3.]
Dr. Barthlen is apparently familiar with Plaintiff's pending
privileging process and the alleged basis for the restrictions.
She states that one of the reasons for the restrictions is that
Plaintiff allegedly paid undue attention to the quality of his
patients' sleep.  Dr. Barthlen states that "[s]leep disorders are
one of the largest unrecognized public health problems" and
"[t]here is no clinical limitation on the amount of attention a
physician should or could provide to patients with potential
sleep disorders."  [Id. at ¶ 5.]  Thus, in spite of the pending
proceedings, Dr. Barthlen believes that Plaintiff's "credentials
are sterling" and that "he has a reputation of integrity and
thoroughness."  [Id. at ¶ 4.]  The pending proceedings did not
deter Dr. Barthlen from hiring Plaintiff.  Captain David Lane,
the TAMC deputy commander of clinical services, testified at the

hearing on the motions that ten to fifteen percent of applicants have some form of NPDB report and that he has hired employees who have NPDB reports.  The record before this Court indicates that, if any of Plaintiff's prospective future employers learn about the adverse privileging proceeding, whether through a future NPDB report or otherwise, they will, like Dr. Barthlen, inquire further into the grounds for adverse action and will still consider Plaintiff for employment.

In the Court's view, the impending harm in this case is Plaintiff's inability to start one particular job at one particular point in time.  If Plaintiff becomes unemployed, this status will likely be temporary, and he will have the benefit of his military salary until October 1, 2010.  This case is therefore distinguishable from the cases which Plaintiff appended to the Injunction Motion.  [Order Granting Plaintiff's Motion for Temporary Restraining Order, Fisher v. Kona Hosp., et al., CV 93-00802 HMF (D. Haw. Oct. 19, 1993) ("Fisher TRO");[4] Temporary Restraining Order, Gamboa v. N. Hawaii Cmty. Hosp., Inc., et al., Civil No. 00-1-0192 (Haw. 3d Cir. Ct. Apr. 27, 2000) ("Gamboa TRO").[5]]  In Gamboa, although the court did issue a TRO, it denied Dr. Gamboa's request for an order restraining and

---

[4] The Fisher TRO is attached to the Injunction Motion as Exhibit G to the Declaration of Eric A. Seitz.

[5] The Gamboa TRO is attached to the Injunction Motion as Exhibit H to the Declaration of Eric A. Seitz.

enjoining the defendants from continuing to suspend his hospital privileges.  The court only restrained and enjoined the defendants from reporting Dr. Gamboa to the NPDB.  [Gamboa TRO at 2.]  As noted *supra*, Plaintiff is not under an imminent threat of being reported to the NPDB.

The district court in Fisher found that Dr. Fisher had suffered and continued to suffer immediate and irreparable harm, and the court granted Dr. Fisher's request for a temporary restraining order requiring the defendants to reinstate his clinical privileges, subject to reasonable observation, if appropriate.  [Fisher TRO at 8-9.]  However, the harm that Dr. Fisher suffered was more severe than the harm that Plaintiff alleges.  Dr. Fisher, an obstetrician/gynecologist, was summarily suspended from Kona Hospital, the only hospital within 100 miles that provided obstetrics care.  [Id. at 3, 8.]  Without privileges at Kona Hospital, Dr. Fisher could not practice medicine in Kona and suffered "an ongoing economic injury, with respect to his ability to earn a living . . . ."  [Id. at 8.]  In contrast, Plaintiff's TAMC privileges are currently restricted to supervised.  He can still practice at TAMC, has the potential for other employment outside of TAMC, and has the benefit of almost three months of paid leave status after he stops work in July. The Fisher TRO does not support Plaintiff's position that he faces an imminent threat of irreparable harm.

15

The Court FINDS that Plaintiff's inability to begin his anticipated private sector employment is a harm, but it is not an irreparable harm which would warrant the extraordinary and drastic remedy of a preliminary injunction or a temporary restraining order.  Plaintiff's Injunction Motion and Renewed TRO Motion are DENIED to the extent that they a order requiring TAMC to restore Plaintiff's privileges.

### C.   **Future Adverse Employment Actions**

Plaintiff also seeks an order requiring Defendant to provide Plaintiff with ten days' prior notice before implementing any new adverse actions.  Plaintiff, however, has not identified any imminent adverse actions or how he will be irreparably harmed if Defendant imposes the adverse action without ten days' prior notice.  Plaintiff has merely alleged a "conjectural or hypothetical" harm of future adverse action; he has not established the "actual and imminent" harm required for a temporary restraining order or a preliminary injunction.  See Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009).

Plaintiff's Injunction Motion and Renewed TRO Motion are DENIED to the extent that they seek an order requiring Defendant to give Plaintiff ten days notice prior to imposing any additional adverse employment action.

### D.   **Representation Before Hearings Board**

Plaintiff also seeks an order addressing certain

aspects of Plaintiff's hearing.  First, he asks the Court to require Defendant to schedule Plaintiff's hearing on a date and time that is mutually convenient to both Plaintiff and Plaintiff's counsel.  Plaintiff's counsel is concerned that Defendant will unilaterally set the hearing on a date that Defendant knows Plaintiff's counsel will be unavailable.  Second, Plaintiff seeks an order requiring Defendant to allow Plaintiff's counsel to represent Plaintiff at his hearing.  Defendant has given Plaintiff notice that, pursuant to Army Regulations, counsel may be present at the hearing, but counsel may only advise Plaintiff.  [Army Reg. 40-68, ¶ 10-8c.]  Plaintiff argues that denying him the right to be represented by counsel violates his constitutional right to due process.

Defendant does not dispute that Plaintiff has a property interest is his hospital privileges and that he is entitled to due process in the adverse privileging process. Defendant, however, argues that, according to the applicable Army Regulations, Plaintiff has received, and will receive in all subsequent proceedings, all of the process that he is entitled to.  "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner."  Buckingham v. Sec'y of United States Dep't of Agric., 603 F.3d 1073, 1082 (9th Cir. 2010) (citations and quotation marks omitted). Plaintiff

17

argues that restricting counsel's role at the hearing to merely being present and giving advice, or scheduling the hearing at a time when counsel is unavailable, deprives Plaintiff of a meaningful hearing.  He contends that, because the hearings board will be acting quasi-judicially, he is entitled to be represented by counsel, which includes the right to have counsel object, argue objections, call witnesses, and cross-examine witnesses.[6] [Mem. in Supp. of Renewed TRO Motion at 11 (citing Federal Communications Comm. v. Schreiber, 329 F.2d 517, 524-26 (9th Cir. 1964)).]

> The Ninth Circuit in Schreiber, however, also stated:
>
> While counsel may, as a matter of right, object and argue objections on the record, just as he may, as a matter of right, cross-examine and call witnesses in a trial-type, adjudicatory proceeding, these rights do not exist in the fact-finding, nonadjudicative investigation unless

---

[6] The Court notes that Plaintiff has also cited Lew v. Kona Hosp., 754 F.2d 1420 (9th Cir. 1985), for the proposition that a provider is entitled to full representation by counsel in an administrative hearing regarding the revocation of his hospital staff privileges.  The Court disagrees with Plaintiff's reading of Lew.  Dr. Lew was allowed to be represented by counsel at his hearing, and the Ninth Circuit noted that he "received adequate procedural safeguards before his property interest was terminated."  Lew, 754 F.2d at 1424.  The Ninth Circuit also noted that due process does not always require a full adversarial hearing and that a hearing need not include all of the aspects of a judicial or quasi judicial hearing.  Moreover, the Ninth Circuit noted that "Dr. Lew received **more than the minimum requirements** of due process."  Id. at 1425 (emphasis added).  Thus, while it may be true that, in a hearing regarding the restriction or revocation of a provider's hospital privileges, due process requires that the provider be allowed representation by counsel, Lew does not stand for this proposition.

> specifically provided by statute or duly
> promulgated rules.

329 F.2d at 526.  At the hearing on the motions, defense counsel argued that Plaintiff was not entitled to full representation of counsel before the hearings board because it is not an adversarial proceeding.  Whether the proceeding is adversarial is not the operative question.  It appears that, under Schreiber, Plaintiff is entitled to be represented, as opposed to merely advised, by counsel if the hearings board will act quasi-judicially.  Based on a bare reading of the relevant Army Regulations, this Court is inclined to find that the hearings board does act quasi-judicially.

When a provider appears before the hearings board, he has the right to be present, submit evidence, call witnesses to testify on his behalf, question witnesses called by the government, [Army Reg. 40-68, ¶ 10-8b.(4),] and make objections. [Id. ¶ 10-8e.]  After receiving all evidence and relevant information, the hearings board makes findings and recommendations.  Its findings must be supported by a preponderance of the evidence, and its recommendations may include reinstatement of the provider's privileges, temporary suspension, reduction, or restriction of privileges, or revocation of privileges.  [Id. ¶ 10-8f.]  Army Regulation 40-68 cautions that "[t]he hearing board must be aware of the gravity of its responsibilities and the need to clearly document its

19

findings and recommendation."  [Id. ¶ 10-8h.]

It is true that the hearings board does not render a final decision; its findings and recommendations to the commander are merely advisory.  [Id. ¶ 10-9c.(1).]  The commander, however, renders a final decision on the provider's privileges after reviewing the hearing record.  [Id. ¶ 10-9c.]  The Army Regulations do not provide for a further hearing before the commander; the proceedings before the hearings board is the provider's only opportunity to appear.  After the commander renders his decision, the provider may request reconsideration by the commander and an appeal to the Surgeon General.  [Id. ¶ 10-10a. & b.]  An appeal or reconsideration after a final decision has been made, however, is fundamentally different from a hearing prior to the final decision.  See, e.g., id. ¶ 10-10a.(2) ("The burden is on the provider to specify the grounds for reconsideration/appeal").  Further, although the appeals process includes the convening of an appeals board that receives information from the provider, [id. ¶ 10-10d. & f.,] the regulations do not appear to provide for a hearing.  Thus, the proceedings before the hearings board are the only opportunity for the provider to appear with counsel.  Based on these functions of the hearings board and the nature of the process following the proceedings before the hearing board, this Court is inclined to find that the hearing board acts quasi-judicially.

20

If the hearings board acts quasi-judicially and Plaintiff is entitled to the full representation of counsel at those proceedings pursuant to Schreiber, the procedures which the Army intends to apply at Plaintiff's hearings would violate Plaintiff's right to due process.  The deprivation of constitutional rights, even for a minimal period, constitutes irreparable harm.  See Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of First Amendment freedoms).  Insofar as Plaintiff's Complaint alleges that Defendant suspended and restricted his privileges in violation of, *inter alia*, his right to due process of law, this Court is inclined to find that Plaintiff is likely to succeed on the merits.  The Court is also inclined to find that the balance of equities tips in Plaintiff's favor because Defendant has not established what the Army's interest is in prohibiting representation by counsel before the hearings board. Similarly, the Court is inclined to find that the public interest weighs in Plaintiff's favor.

Thus, the Court is inclined to grant the Injunction Motion and the Renewed TRO Motion as to Plaintiff's request for an order requiring Defendant to allow Plaintiff to be represented by counsel before the hearings board and requiring Defendant to schedule the hearing for a date and time that permits both Plaintiff and Plaintiff's counsel to attend.  The Court, however, acknowledges that the parties did not devote a significant

21

portion of their memoranda and argument to this issue, perhaps because the Court's April 20, 2010 Order focused on the ultimate harm which may result from the adverse privileging process and not on the elements of the process itself.  The Court will therefore reserve ruling on this issue and permit optional supplemental briefing regarding Plaintiff's request for an order protecting his right to be represented by counsel before the hearings board, including the issue whether this Court has jurisdiction to issue such an order.

In light of this Court's inclination, the Court directs Defendant to submit any supplemental memorandum by no later than **July 12, 2010**, and directs Plaintiff submit any supplemental memorandum by no later than **July 22, 2010**.  The Court will take the matter under advisement thereafter.  No further briefing will be allowed without leave of Court.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Preliminary Injunction, filed March 8, 2010, and Plaintiff's Renewed Motion for Temporary Restraining Order, filed May 21, 2010, are HEREBY DENIED IN PART.  The Motions are DENIED as to Plaintiff's request for an order: 1) restraining and enjoining Defendant from making any adverse report about Plaintiff to the NPDB; 2) requiring Defendant to restore Plaintiff's TAMC privileges immediately; and 3) requiring Defendant to give

22

Plaintiff ten days' notice prior to implementing any further adverse employment action.

The Court reserves ruling as to Plaintiff's request for an order protecting his right be represented by counsel before the hearings board.  The Court ORDERS the parties to submit supplemental memoranda on this issue.  Defendant shall submit his supplemental memorandum by no later than **July 12, 2010**, and Plaintiff shall submit his supplemental memorandum by no later than **July 22, 2010**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 30, 2010.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States Magistrate Judge

**MICHAEL B. RUSSO, M.D. V. STEPHEN L. JONES, ETC; CIVIL NO 10-00125 LEK; ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER IN PART AND PERMITTING FURTHER BRIEFING**