IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL B. RUSSO, M.D.,      )      CIVIL NO. 10-00125 LEK
                            )
          Plaintiff,         )
                            )
     vs.                     )
                            )
STEPHEN B. JONES, in his     )
capacity of the Commander of )
Tripler Army Medical Center; )
JOHN OR JANE DOES 1-25; and  )
DOE ENTITIES 1-25,           )
                            )
          Defendant.         )
_____ )


**AMENDED ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**

Defendant Stephen L. Jones, in his official capacity as

Commander of Tripler Army Medical Center ("Defendant"), filed the

instant Motion to Dismiss ("Motion") on May 20, 2010.  Plaintiff

Michael B. Russo, M.D. ("Plaintiff") filed his memorandum in

opposition on June 21, 2010, and Defendant filed his reply on

June 28, 2010.  This matter came on for hearing on July 23, 2010.

Appearing on behalf of Defendant were Major Jennifer Bottoms and

Assistant United States Attorney Thomas Helper, and appearing on

behalf of Plaintiff were Eric Seitz, Esq., and Ronald Kim, Esq.

After careful consideration of the Motion, supporting and

opposing memoranda, and the arguments of counsel, Defendant's

Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the

reasons set forth below.

## **BACKGROUND**

The parties and the Court are familiar with the factual
and procedural history of this case.  The Court therefore refers
to its prior orders for a discussion of the relevant background
of this case.

In the instant Motion, Defendant argues that
Plaintiff's claims in this case are not justiciable because the
United States Army ("Army") has not taken final administrative
action in the adverse privileging process.  Defendant also argues
that Plaintiff's claims are barred by sovereign immunity.

Plaintiff seeks, *inter alia*, a permanent injunction
preventing the Army from reporting Plaintiff to the National
Practitioner's Data Bank ("NPDB").  Defendant emphasizes that
there are several additional layers of due process provided in
the applicable Army Regulations before Plaintiff may be reported
to the NPDB.  Thus, there is no final action at this point.  The
result, and its potential effect on the parties, is unclear and
dependent on future events.  The agency's decision at any one of
various points in the process could render this case moot.

Defendant also argues that Plaintiff has failed to
identify a proper jurisdictional basis in this case.  Plaintiff
cites 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343
(civil rights), but these are general jurisdictional statutes;
they do not confer jurisdiction where the United States has not

waived sovereign immunity.  Plaintiff also cites 28 U.S.C. § 1346, the Little Tucker Act.  In order to fall within the Little Tucker Act's wavier of sovereign immunity, a plaintiff must identify a separate source of substantive law creating a right to money damages.  The substantive statute must require compensation for damages sustained as a result of the breach of the duties that the statute imposes.  Defendant argues that, other than the Takings Clause, constitutional provisions are not money mandating.  Defendant also argues that Plaintiff has not demonstrated that he has suffered actual damages as a result of the adverse privileging process.  Plaintiff also relies on the Military Whistleblower Protection Act ("MWPA"), 10 U.S.C. § 1034.  The MWPA, however, provides an administrative remedy for service members to bring grievances of improper retaliatory personnel actions, it does not create a private cause of action.  Defendant notes that the Ninth Circuit has not addressed the scope of the MWPA, but that other courts have held that it does not create a private cause of action.

Finally, Defendant argues that Plaintiff's due process claim does not create jurisdiction.  Plaintiff has not suffered actual damages because there has been no final decision.  The Due Process Clause cannot be combined with the Little Tucker Act to create jurisdiction because it does not mandate compensation.  Defendant also argues that Plaintiff has not established a

liberty or property interest protected by the Fifth Amendment. To have a property interest in his earnings capacity, Plaintiff must establish an entitlement to it, such as a statutory entitlement to welfare or social security benefits. Plaintiff has not done so. In order to establish an injury to his liberty interest in his reputation or standing, Plaintiff must show that the injury to his reputation is accompanied by the loss or alteration of a right or a status recognized by law. As to Plaintiff's substantive due process claim, Defendant acknowledges that the Fifth Amendment protects the right to hold specific private employment free from governmental interference. Defendant, however, argues that substantive due process rights are only implicated when the government completely prohibits, rather than briefly interrupts, the plaintiff from engaging in his chosen profession. Further, even assuming that Plaintiff has a liberty or property interest, Plaintiff has not been deprived of notice or a meaningful hearing.

In his memorandum in opposition, Plaintiff states that, by arguing that a report to the NPDB is only hypothetical, Defendant ignores the other harm that Plaintiff has suffered, and will continue to suffer, because of the summary suspension and restrictions of his clinical privileges. Plaintiff acknowledges that, as a general rule, an issue is fit for judicial consideration if it does not depend upon future events.

4

Plaintiff, however, argues that he may obtain preventative relief because the Army's final decision is impending.  The prior decisions to summarily suspend Plaintiff's privileges and to further restrict his privileges are final for purposes of the ripeness analysis.  They are final decisions, although they are subject to the hearings process, because they took immediate effect and have directly affected Plaintiff.  Plaintiff also argues that the decisions which unduly delayed the process are also final and have prejudiced him.

The fact that there are further steps in the administrative process does not prevent judicial review.  Even where there are additional administrative steps pending, a court may review a decision if its consequences are sufficiently concrete and definite.  Plaintiff asserts that he has already been deprived of a significant property interest and that the process has already affected his substantial rights.

Plaintiff argues that there is jurisdiction in this case because he merely seeks equitable relief to rectify the violation of his constitutional rights, a claim over which jurisdiction is clearly established.  Plaintiff argues that Congress can only preclude judicial review of constitutional claims if it expresses a clear intent to do so, and there is no clear expression in the applicable statutes.  Further, Plaintiff asserts that there is jurisdiction over his Fifth Amendment claim

5

because he has a property interest, and potentially a liberty interest, in his clinical privileges.  Defendant summarily deprived him of those interests without adequate notice or an opportunity to be heard.  Further, he has been deprived of his liberty interest in his reputation because of the stigmatizing effect of the false accusations against him.  Plaintiff also contends that Defendant violated the Due Process Clause and the Army's regulations by unduly prolonging the adverse privileging process.  This is preventing Plaintiff from making the transition into civilian employment.

Finally, Plaintiff argues that the hearing which the Army is planning to hold is tainted and will deny him his constitutional right to be represented by counsel.  Plaintiff argues that the fact that the Army's regulations provide for the denial of full representation at the hearing does not allow it to circumvent the requirements of due process.  Plaintiff also emphasizes that the Army has already violated its regulations during the course of the adverse privileging process.

Defendant filed his reply on June 28, 2010.  Defendant argues that, although Plaintiff claims that a final agency action has already occurred, he has failed to identify how the Army's final position has been stated because there are several remaining steps in the process.  Defendant also argues that Plaintiff has not identified how the alleged final decision has

6

directly and immediately affected him, and he has not identified any constitutionally protected liberty or property interest that Defendant has deprived him of.

Defendant argues that the decision to summarily suspend Plaintiff and temporarily restrict his privileges are not final decisions for purposes of the ripeness standard.  These actions are only temporary, lasting while the review process continues. Defendant emphasizes that only the Army Surgeon General can render a final decision.  After the adjournment of the formal hearing, the commander may halt the adverse privilege process and restore Plaintiff's privileges, or he may choose to forward the action to the Surgeon General.  The Surgeon General will then decide whether or not to permanently restrict Plaintiff's privileges and to report him to the NPDB.  Plaintiff cannot be said to have suffered a direct and immediate effect from a final decision because there are several contingencies remaining.

Plaintiff only makes a bald argument that the adverse privileging process has caused him hardship.  Defendant argues that Plaintiff has failed to establish hardship to the extent that would warrant the drastic remedy of court intervention. Plaintiff would have to establish that failure to comply with a final agency rule would result in severe criminal and civil penalties.  Plaintiff's claimed deprivation of a protected property interest does not establish the required hardship.

Defendant has not deprived him of any liberty or property interest during the adverse privileging process. There has been no permanent deprivation of Plaintiff's interests. Defendant argues that to trigger a liberty or property interest, the challenged action must make it virtually impossible, on a permanent basis, for the plaintiff to find employment in his chosen field. Plaintiff has not established that the adverse privileging process, or even a report to the NPDB, will make it permanently impossible for him to find employment as a neurologist. Defendant emphasizes that it has not prohibited or interrupted Plaintiff's employment; he is choosing to voluntarily retire and seek private employment. The fact that Sleep Center Hawaii, LLC ("Sleep Center"), a single private employer, may choose not to hire Plaintiff at this time does not create a constitutionally protected property interest.

Finally, assuming, *arguendo*, that Plaintiff has a property interest, he cannot establish that he has been deprived of that interest without notice and without a meaningful hearing. Defendant argues that Plaintiff has received adequate notice of the impending formal hearing and that it will be a meaningful hearing.

A number of significant events have occurred since the completion of the briefing for this Motion. The hearings board held Plaintiff's hearing on June 28 and 29, 2010. Plaintiff's

counsel was permitted to be present at the hearing in an advisory

capacity, but he was not allowed to represent Plaintiff.

Plaintiff introduced evidence, questioned witnesses, and

presented arguments on his own behalf. The hearings board has

apparently prepared findings of fact and conclusions of law.

Defense counsel, however, has represented to the Court that,

pursuant to Army regulations, the Army will not release the

findings and conclusions unless the Surgeon General renders a

final adverse decision. As of July 8, 2010, Plaintiff is no

longer working at Tripler Army Medical Center ("TAMC"), but he

will remain on leave status until his official retirement date of

October 1, 2010. Although earlier it was unclear whether

Plaintiff would be allowed to begin employment with the Sleep

Center during the pendency of the adverse privileging process,

Plaintiff's counsel has recently represented that the Sleep

Center will not hire Plaintiff pending the completion of the

process.

## STANDARD

Under Rule 12(b)(6), review is generally
limited to the contents of the complaint.
Sprewell v. Golden State Warriors, 266 F.3d 979,
988 (9th Cir.2001). If matters outside the
pleadings are considered, the Rule 12(b)(6) motion
is treated as one for summary judgment. See Keams
v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th
Cir.1997); Anderson v. Angelone, 86 F.3d 932, 934
(9th Cir.1996). However, courts may "consider
certain materials–documents attached to the
complaint, documents incorporated by reference in
the complaint, or matters of judicial

9

notice-without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir.2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir.1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S.Ct. 1955).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir.1984)).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

## **DISCUSSION**

## I. **Ripeness**

The Court first turns to Defendant's argument that Plaintiff's claims are not ripe for adjudication because there are multiple steps remaining in his adverse privileging process.

"It is well settled that 'injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution.'" Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 779 (9th Cir. 2000) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by, Califano v. Sanders, 430 U.S. 99 (1977)) (some citations omitted).

> The ripeness doctrine rests, in part, on the Article III requirement that federal courts decide only cases and controversies and in part on prudential concerns. See Maldonado v. Morales, 556 F.3d 1037, 1044 (9th Cir.2009), cert. denied, --- U.S. ----, 130 S.Ct. 1139, --- L.Ed.2d ---- (2010); W. Oil & Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1290 (9th Cir.1990). The ripeness inquiry is "intended to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Maldonado, 556 F.3d at 1044 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). To determine whether a case is ripe, "we consider two factors: 'the fitness of the issues for judicial decision,' and 'the hardship to the parties of withholding court consideration.'" Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1211-12 (9th Cir.2006) (en banc) (per curiam) (quoting Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507). . . .
>
> A question is fit for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." Cardenas v. Anzai, 311 F.3d 929, 934 (9th Cir.2002) (internal quotation marks omitted); see also United States v. Streich, 560 F.3d 926, 931 (9th Cir.), cert.

denied, --- U.S. ----, 130 S.Ct. 320, 175 L.Ed.2d
211 (2009). "At the same time, a litigant need
not 'await the consummation of threatened injury
to obtain preventive relief. If the injury is
certainly impending, that is enough.'" Id.
(quoting 18 Unnamed "John Smith" Prisoners v.
Meese, 871 F.2d 881, 883 (9th Cir.1989) (emphasis
in Streich)).

Addington v. U.S. Airline Pilots Ass'n, 606 F.3d 1174, 1179 (9th

Cir. 2010).

This Court must determine whether Plaintiff's claims

were ripe at the time he filed his Complaint. See Democratic

Nat'l Comm. v. Watada, 198 F. Supp. 2d 1193, 1197 (D. Hawai'i

2002) (citing Malama Makua v. Rumsfeld, 136 F. Supp. 2d 1155,

1161 (D. Haw. 2001) ("[r]ipeness is an element of jurisdiction

and is measured at the time an action is instituted"); Lockary v.

Kayfetz, 917 F.2d 1150, 1153-54 (9th Cir. 1990) (ripeness in

takings case determined at time suit was filed) (some citations

omitted)). This Court therefore cannot consider events that

occurred after Plaintiff filed his Complaint. See id.

In this Court's view, Plaintiff's case challenges two

aspects of the adverse privileging process: the merits of the

adverse actions taken against him; and the procedural decisions

that have occurred in the course of the adverse privileging

process. The ripeness analysis of Plaintiff's merit-based claims

is distinct from that of his procedure-based claims.

A.    **Merit-based Claims**

On or about January 8, 2009, TAMC summarily suspended

12

Plaintiff's clinical privileges while the TAMC Credentials Committee looked into allegations of incompetence.  The summary suspension was rescinded later that month, but Plaintiff's credentials were held in abeyance pending peer review.  On June 5, 2009, Plaintiff's privileges were conditionally reinstated pending a training, monitoring, and evaluation period. On October 8, 2009, Plaintiff was informed that he had completed the training and could practice clinically under supervision. Although the supervision process was supposed to be completed by October 30, 2009, the Army did not lift the restrictions on Plaintiff's privileges.  [Order Denying Plaintiff's Motion for Temporary Restraining Order, filed 4/20/10 (dkt. no. 21), at 2-4.]  The review process continued, and Plaintiff eventually received a notice dated March 22, 2010 which further restricted his privileges and stated that he had the right to request a hearing on the decision within thirty days ("March 22, 2010 Notice").  [Id. at 5-6.]  Plaintiff filed this action on March 8, 2010.

Plaintiff's Complaint alleges, *inter alia*, that "there is not and never has been any evidence to support the summary suspension, abeyances, and/or restrictions of his privileges at TAMC"; and "there is not and has never been any justification or basis for suspending, abeying, or restricting his hospital privileges at TAMC prior to conducting and affording him a formal

13

hearing." [Complaint at ¶¶ 40-41.] Plaintiff seeks, *inter alia*, declaratory relief stating that the adverse privileging actions taken against him were invalid and injunctive relief preventing Defendant from restricting his privileges or reporting him to the NPDB. [Id. at pg. 14-15.]

Since filing the Complaint, Plaintiff has acknowledged that there has not been a final decision which is reportable to the NPDB. Plaintiff, however, argues that his claim based on the decisions to summarily suspend his privileges, and subsequent actions imposing various restrictions on his privileges, are ripe for review.[1] He contends that such a claim is fit for judicial decision and that withholding a decision would be prejudicial to him.

### 1.   **Fitness for Decision**

"[A]gency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action." Anchorage v. United States, 980 F.2d 1320, 1323 (9th Cir.1992) (citations omitted). Courts traditionally take a pragmatic and flexible view of finality. See Abbott Laboratories, 387 U.S. at 149-50, 87 S.Ct. 1507. "The core question is whether the agency has completed its decision making process, and

---

[1] The Court notes that Plaintiff's Complaint also challenges his placement in the Impaired Healthcare Personnel Program ("IHPP"). [Complaint at ¶¶ 17, 19.] Plaintiff, however, does not address this issue in his memorandum in opposition. Insofar as Plaintiff was allegedly placed in the IHPP based on his response to the summary suspension and Plaintiff argues that the placement was unjustified, this Court considers Plaintiff's challenge to the placement in the IHPP as part of his challenge to the merits of the adverse privileging actions against him.

whether the result of that process is one that
will directly affect the parties." <u>Franklin v.
Massachusetts</u>, 505 U.S. 788, 797, 112 S.Ct. 2767,
120 L.Ed.2d 636 (1992).  We have accordingly
looked to the following elements: whether the
administrative action is a definitive statement of
an agency's position; whether the action has a
direct and immediate effect on the complaining
parties; whether the action has the status of law;
and whether the action requires immediate
compliance with its terms.  <u>See</u> <u>Mt. Adams Veneer
Co. v. United States</u>, 896 F.2d 339, 343 (9th
Cir.1989), <u>see also</u> <u>Anchorage</u>, 980 F.2d at 1323;
<u>Ukiah Valley Medical Ctr. v. Fed. Trade Comm'n</u>,
911 F.2d 261, 264 (9th Cir.1990) ("The general
rule is that administrative orders are not final
and reviewable 'unless and until they impose an
obligation, deny a right, or fix some legal
relationship as a consummation of the
administrative process.'") (quoting <u>Chicago & S.
Air Lines, Inc. v. Waterman S.S. Corp.</u>, 333 U.S.
103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948));
<u>Sierra Club v. Nuclear Regulatory Comm'n</u>, 825 F.2d
1356, 1362 (9th Cir.1987) ("We will not entertain
a petition where pending administrative
proceedings or further agency action might render
the case moot and judicial review completely
unnecessary.") (citation omitted).

<u>Ass'n of Am. Med. Colls.</u>, 217 F.3d at 780.

Plaintiff argues that the decisions to summarily
suspend his privileges and later to further restrict his
privileges are final statements of the Army's position because,
although he was entitled to a hearing and appeal process, the
decisions took immediate effect.  The Court disagrees.

First, the Court notes that it cannot consider any of
the events that occurred after March 8, 2010 because ripeness
must be determined at the time Plaintiff filed his Complaint.
<u>See</u> <u>Watada</u>, 198 F. Supp. 2d at 1197.  Neither the summary

suspension of Plaintiff's privileges in January 2009, which was

later rescinded, nor any of the various restrictions imposed

before March 8, 2010, is a final decision for purposes of the

ripeness analysis.  DoD 6025.13-R, Military Health System (MHS)

Clinical Quality Assurance (CQA) Program Regulation, DL1.1.51.

states, in pertinent part:

> The temporary removal of all or part of a
> provider's privileges, taken prior to the
> completion of due process procedures . . . is
> needed to protect patients or the integrity of the
> command resulting from cases involving the
> temporary removal from cases, professional or
> behavioral impairment or negligence.  A summary
> suspension could continue until due process
> procedures are completed.  Summary suspension of
> privileges within the Department of Defense is not
> reportable to the NPDB, unless the final action is
> reportable.

Thus, the summary suspension itself is not a final decision.  It

is merely a precaution that the Army takes during the pendency of

the adverse privileging process.  The other actions, such as

holding Plaintiff's privileges in abeyance, conducting a peer

review, and imposing training and supervision requirements, are

merely single steps in a multi-step adverse privileging process.

At the time Plaintiff filed the Complaint, there were a number of

steps available in the process before a final decision could be

made.[2]

---

[2] The adverse privileging process is set forth in Army Reg.
40-68, ¶ 10-6.  After the Commander's decision, the provider has
th right to request a hearing pursuant to ¶ 10-7.  The hearing
(continued...)

The Court acknowledges that the privileging actions took immediate effect and directly effected Plaintiff's practice at TAMC.  Further, Plaintiff was immediately required to comply.  Although these factors weigh in favor of finality, the privileging actions were not definitive statements of the Army's position.  At the time Plaintiff filed the Complaint, the commander had not even issued a decision from which Plaintiff had the right to request a review hearing.[3]  Thus, at a number of points in the process, a decision favorable to Plaintiff would render the case moot.  For example, the commander could have chosen not to pursue any adverse action against Plaintiff, or, after reviewing the hearing records and the hearings board's findings and recommendations, he could have decided to reinstate Plaintiff's privileges.  Even if the commander decides to deny, suspend, restrict, reduce, or revoke Plaintiff's privileges, he may find in Plaintiff's favor upon a request for reconsideration.  The Surgeon General may also find in Plaintiff's favor on appeal and restore Plaintiff's privileges.  There is no evidence in the record which indicates that these additional steps are a mere formality involving virtually certain adoption of the adverse

---

[2](...continued)
procedure, subsequent action, and the appeal process are governed by ¶¶ 10-8, 10-9, and 10-10, respectively.

[3] The commander issued that decision in the March 22, 2010 Notice, but this Court cannot consider that event in the ripeness analysis because it occurred after Plaintiff filed this action.

actions taken against Plaintiff prior to the filing of the Complaint.  This Court therefore FINDS that Plaintiff's merit-based claims are not fit for review because there was no final agency action prior to the filing of the Complaint.

### 2.   Prejudice to the Parties

Plaintiff also argues that ripeness can be found "based solely upon the hardship to the parties where the impact is direct and immediate and requires an immediate and significant change in a plaintiff's present conduct under the threat of future sanctions for non-compliance."  [Mem. in Opp. at 4 (citing Ass'n of Am. Med. Colls., 217 F.3d at 783; Anchorage v. United States, 980 F.2d 1320, 1325-26 (9th Cir. 1992)) (some citations omitted).]

First, the Court notes that, in Association of American Medical Colleges, the Ninth Circuit discussed the ripeness exception set forth in Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).  See Ass'n of Am. Med. Colls., 217 F.3d at 783-84.  Abbott Laboratories addressed a regulation regarding drug labeling requirements.  The plaintiffs in that case believed that the regulation exceeded the authority of the underlying statute, but they risked severe civil and criminal penalties if they did not comply with the regulation.  See Abbott Labs., 387 U.S. at 152.  Thus, although the government had not enforced the

regulation against the plaintiffs, the Supreme Court reversed the court of appeals' holding that the plaintiffs' challenge to the regulation was not ripe.  See id. at 156.  Abbott Laboratories, however, is distinguishable from the instant case because the Supreme Court held that the issues in that case were fit for judicial review and that the regulation at issue was a definitive statement of the agency's position.  See id. at 149-51.  The regulation, however, had not been applied directly to the plaintiffs through a prosecution.  Abbott Laboratories therefore does not support Plaintiff's position that this Court can find his claims ripe based solely on hardship where the issues are not fit for judicial review.  Even if a finding of fitness for judicial review is not required under Abbott Laboratories, the Abbott Laboratories rule generally applies if "regulations require changes in present conduct on threat of future sanctions."  Ass'n of Am. Med. Colls., 217 F.3d at 783 (citing Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 734 (1998) (plaintiff is outside Abbott Laboratories rule where agency plan does not "force [plaintiff] to modify its behavior in order to avoid future adverse consequences, as, for example, agency regulations can sometimes force immediate compliance through threat of future sanctions") (some citations omitted)).

        Municipality of Anchorage v. United States provides more support for Plaintiff's position.  In that case, the Ninth

Circuit stated: "Courts have consistently held that hardship tips the balance in favor of review only when the regulation has a direct and immediate impact on those subject to it in conducting their 'day-to-day affairs,' when it affects 'primary conduct,' or when 'irremediable adverse consequences flow from requiring a later challenge.'"  980 F.2d 1320, 1326 (9th Cir. 1992) (quoting Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 164 (1967)).  Under such circumstances, the plaintiff's hardship outweighs the court's and the agency's interest in delaying review until the final agency decision.  See id.

In other motions in this case, Plaintiff's primary argument regarding prejudice has been that he is not able to obtain employment in the private sector due to the restriction of his TAMC privileges and the pending review process.[4]  He was not able to begin his intended position with the Sleep Center because he will be unable to obtain clinical privileges at other hospitals or to secure malpractice insurance.  Defendant has pointed out that Plaintiff has not presented evidence that he has applied for and been denied clinical privileges or malpractice insurance.  Defendant argued that hospitals may still grant Plaintiff privileges after conducting further investigation into

---

[4] To the extent that Plaintiff contends that the Army unduly prolonged the adverse privileging process and that the delay has been prejudicial to him, the Court will address this argument as part of Plaintiff's procedure-based claims.

the details of the pending adverse privileging process and that Plaintiff may still be able to obtain malpractice insurance, although not at the price he would have liked to pay.  Whether it is actually possible for Plaintiff to obtain other clinical privileges and malpractice insurance, however, is ultimately irrelevant.

First, this Court cannot consider Plaintiff's inability to begin work at the Sleep Center because, at the time he filed the Complaint, Plaintiff was still working at TAMC.  Even if the Court could consider his ability to work at the Sleep Center, it would not constitute sufficient hardship for the ripeness analysis.  The Ninth Circuit has stated that "[t]o meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail **more than possible financial loss**." Addington, 606 F.3d at 1180 (citations and quotation marks omitted) (emphasis added).  Plaintiff's inability to start his chosen position on his chosen date is merely a temporary financial loss.

Plaintiff's summary suspension and the various restrictions on his privileges did have a direct and immediate effect upon his day-to-day affairs because it affected the manner in which Plaintiff practiced medicine at TAMC.  Arguably, for someone of Plaintiff's experience and professional stature to be forced to undergo additional training, monitoring, and

21

supervision can be considered a hardship.  Plaintiff also can be said to have faced further adverse actions if he did not comply with the various requirements imposed upon him during the course of the adverse privileging process.  TAMC could have revoked Plaintiff's privileges completely if he did not complete the required training or submit to the monitoring of his practice. Plaintiff, however, was able to continue practicing at TAMC, albeit with additional restrictions and requirements, until his chosen retirement date.  Under the circumstances of this case, although Plaintiff suffered hardship as a result of the summary suspension and other restrictions on his clinical privileges, it does not outweigh the courts' and the Army's interest in delaying consideration of Plaintiff's merit-based claims until there is a final agency decision in the adverse privileging process.

Plaintiff's claims challenging the merits of the adverse privileging actions taken against him prior to the filing of the Complaint are not ripe for judicial review.  This Court therefore FINDS that it does not have jurisdiction over those claims and GRANTS Defendant's Motion as to Plaintiff's merit-based claims.

B.    **Procedure-based Claims**

The Court now turns to Plaintiff's claims challenging procedural decisions during the portion of the adverse

privileging process prior to the filing of the Complaint.[5]
Plaintiff contests a number of procedural decisions: the fact
that his summary suspension and other limitations prior to the
filing of the Complaint did not trigger a right to a hearing; and
the fact that, over a year after the original summary suspension,
the commander still had not issued a decision triggering the
right to a hearing in which he could contest the adverse
privileging actions.

      1.   **Fitness for judicial review**

      Plaintiff contests the decision that he did not have
the right to a hearing to challenge either his summary suspension
or the other limitations on his privileges prior to the March 22,
2010 Notice.  The Court finds that this decision is a final
expression of the Army's position.  Those limitations took effect
prior to the filing of the Complaint and the Army did not afford
Plaintiff a hearing to contest them.  In addition, by the time
Plaintiff filed the Complaint, it had been over a year since the
adverse privileging process began and the matter still was not
resolved.  Hence, in the Court's view, the timing of the process
also constitutes a final "decision" because nothing could change

---

     [5] A number of significant procedural decisions occurred
after Plaintiff filed the Complaint.  For example, pursuant to
its regulations, the Army prohibited Plaintiff's counsel from
actively representing Plaintiff during his hearing.  The Court,
however, must determine ripeness at the time Plaintiff initiated
this action.

the fact that the matter was unresolved, six, nine, or twelve months after the initial adverse privileging action.  Whether the privileging actions prior to the filing of the Complaint triggered Plaintiff's constitutional right to due process and, if so, whether the failure to resolve the adverse privileging process in a timely manner violated that right, involves legal questions that are not contingent upon future or uncertain events.  This Court therefore FINDS that the decision not to afford Plaintiff a hearing to contest the privileging actions which occurred prior to the filing of the Complaint, and the failure to resolve the adverse privileging process in a timely manner, are fit for judicial decision.  The Court, however, emphasizes that it expresses no opinion at this time as to the merits of Plaintiff's procedure-based claims.

> 2.   **Hardship to the Parties**

As this Court has previously stated, for someone of Plaintiff's experience and professional stature, being forced to undergo additional training, monitoring, and supervision can be considered a hardship which presents more than a mere potential financial loss.  The restrictions affected the manner in which Plaintiff practiced medicine at TAMC, and they reflect negatively on his professional reputation.  This is particularly so in light of the amount of time that passed from the initial summary suspension during which Plaintiff was forced to bear this

24

professional stigma without being able to contest the allegations against him in a hearing.  The Court therefore FINDS that withholding consideration of Plaintiff's procedure-based claims would pose a hardship to Plaintiff.

Insofar as Plaintiff's procedure-based claims are fit for judicial decision and withholding consideration of those claims would prejudice Plaintiff, this Court FINDS that Plaintiff's procedure-based claims are ripe.

## II. <u>Statutory Basis for Jurisdiction</u>

Defendant also argues that the Court should dismiss Plaintiff's claims because Plaintiff has not established a proper basis for this Court's jurisdiction to hear his claims.  This Court need not address whether Plaintiff has established the proper jurisdictional basis for his merit-based claims because this Court has already found that it lacks jurisdiction over Plaintiff's merit-based claims.

Plaintiff's procedure-based claims are ripe for review, and he "seeks equitable relief to rectify the violation of his constitutional rights to due process[.]"  [Mem. in Opp at 7.] "It is well established that federal courts have jurisdiction to provide equitable relief to protect rights safeguarded by the Constitution."  <u>Clinton v. Babbitt</u>, 180 F.3d 1081, 1087 (9th Cir. 1999) (citing <u>Bell v. Hood</u>, 327 U.S. 678, 684 (1946)).  Further, "[i]n 5 U.S.C. § 702, the United States expressly waived

25

sovereign immunity in non-statutory review actions for

nonmonetary relief brought under 28 U.S.C. § 1331." Id.

(citations and quotation marks omitted).  This Court therefore

FINDS that it has jurisdiction over Plaintiff's procedure-based

claims.

## III. **Failure to State a Claim**

         Finally, Defendant argues that Plaintiff has failed to

state a claim for the violation of his due process rights because

he has not established a property or liberty interest which

triggered constitutional due process protections.  Defendant

contends that, because Plaintiff has only alleged harm to his

reputation and earning capacity, he has not alleged a

constitutionally protected interest.

         In Lew v. Kona Hosp., 754 F.2d 1420 (9th Cir. 1985),

the Ninth Circuit evaluated a doctor's claims of discriminatory

treatment and violations of due process in the decision to

terminate his staff privileges.  The Ninth Circuit clearly held

that the doctor had a property interest in his employment at the

hospital and the analysis in Lew is instructive here.

> To evaluate Dr. Lew's claim, we apply the two step
> analysis adopted to Stretten v. Wadsworth
> Veteran's Hospital, 537 F.2d 361, 365 (9th Cir.
> 1976) (citing Board of Regents v. Roth, 408 U.S.
> 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).  We
> must determine: (1) whether the interest plaintiff
> asserts rises to the level of a property interest,
> and if so, (2) whether, in light of the competing
> interests of the individual and the state, the
> procedures afforded plaintiff before termination

26

                satisfied due process.  <u>See also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).  Under the first prong of the analysis, the relevant inquiry is whether the plaintiff has an entitlement to the property interest created by an independent source such as state law.  <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. at 2709.  **Dr. Lew has such a property right.**  The state of Hawaii has recognized a licensed doctor's property right in employment as a probationary hospital staff member.  <u>Silver v. Castle Memorial Hospital</u>, 53 Hawaii 475, 497 P.2d 564, <u>cert. denied</u>, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500 (1972).

<u>Lew</u>, 754 F.2d at 1424 (some citations omitted) (emphasis added).

      Although the defendant in <u>Lew</u> was a state hospital, in this Court's view, the state-recognized property interest in hospital privileges extends to all hospitals in the state, including TAMC.  <u>See</u>, <u>e.g.</u>, <u>Lowe v. Scott</u>, 959 F.2d 323, 336 (1st Cir. 1992) (citing <u>Lew</u>, 754 F.2d at 1424 (staff privileges were property right under Hawaii common law, and adequate process was provided for their revocation)).  <u>But see</u> <u>Dizon v. Hawaii Permanente Med. Grp., Inc.</u>, No. 95-15284, 1996 WL 387651, at *1 (9th Cir. July 10, 1996) (holding that <u>Silver</u> and <u>Lew</u> were limited to public or "quasi-public" hospitals and did not extend to private clinic).  In <u>Lowe</u>, the First Circuit stated:

        Where state law directly establishes a property interest in hospital privileges, all of the state's licensed physicians are entitled to due process in decisions affecting their hospital privileges.  The public or private status of the hospital at which the physician holds privileges then becomes irrelevant to the issue of whether a property interest exists because it is the state itself, rather than the public hospital as state

27

> employer, that has directly conferred the
> physician's legitimate claim of entitlement to the
> protected interest in privileges.

Id. (citations and quotation marks omitted). This Court agrees

with the First Circuit's reasoning. The Court therefore FINDS

that Plaintiff has a property interest in his clinical privileges

at TAMC.

Defendant's argument that Plaintiff was not entitled to

due process because his clinical privileges were only temporarily

restricted is misplaced. Defendant's argument is more

appropriately addressed in the second prong of the test discussed

in Lew: whether, in light of Plaintiff's and TAMC's competing

interests, the procedures afforded Plaintiff during the adverse

privileging process comported with due process. This Court,

however, will not address that issue in a motion to dismiss, and

rules that Plaintiff has identified a constitutionally protected

property interest sufficient to withstand a motion to dismiss.

Defendant's Motion is therefore DENIED as to Plaintiff's

procedure-based claims. The Court emphasizes that it expresses

no opinion as to the ultimate merits of Plaintiff's claims.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to

Dismiss, filed May 20, 2010, is HEREBY GRANTED IN PART AND DENIED

IN PART. The Motion is GRANTED insofar as Plaintiff's claims

challenging the merits of the adverse privileging actions are

DISMISSED WITHOUT PREJUDICE.   The Motion is DENIED as to
Plaintiff's claims challenging the denial of his right to a
hearing to address the restrictions on his clinical privileges
prior to the filing of the Complaint and the allegedly undue
delay in the adverse privileging process.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 24, 2010.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**MICHAEL B. RUSSO, M.D. V. STEPHEN B. JONES, ETC., ET AL; CIVIL
NO. 10-00125 LEK; AMENDED ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS**